**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BRUCE MICHAEL KROSLOWITZ,

        Plaintiff,

Case No. 3:12-cv-1140-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I.  Status

Bruce Michael Kroslowitz ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is due to "Bi-polar/schizophrenia/left wrist injury[.]" Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed August 5, 2013, at 315. On June 6, 2008, Plaintiff filed an application for DIB, alleging an onset disability date of October 12, 2007.  Tr. at 271-75.[2]  Plaintiff's application was denied initially, see Tr. at 123-24, 128-29, and was denied upon reconsideration, see Tr. at 125-26, 133-34.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 23), filed November 18, 2013; Reference Order (Doc. No. 24), entered November 19, 2013.

[2] The administrative transcript contains an application for supplemental security income also dated June 6, 2008, Tr. at 267-69, but Plaintiff did not proceed with this application, See Tr. at 106.

On November 5, 2010, an Administrative Law Judge ("ALJ") held a hearing, during which Plaintiff and a vocational expert ("VE") testified. Tr. at 90-122. The ALJ apparently determined after the hearing that a medical expert ("ME") was necessary to address the effects of Plaintiff's mental impairments. See Tr. at 37-38. So, on May 18, 2011, the ALJ convened a second hearing, but that hearing had to be continued because the ME had not received the file to review. Tr. at 85-89. On July 21, 2011, the ALJ held a third hearing at which Plaintiff, who was represented by counsel; the VE; and the ME testified. Tr. at 35-84. The ALJ issued a Decision on September 22, 2011, finding Plaintiff not disabled through the date he was last insured for DIB. Tr. at 14-28.

After the ALJ's Decision was issued, the Appeals Council received from Plaintiff and incorporated into the administrative transcript some additional evidence in the form of a letter from Plaintiff's counsel. Tr. at 4-5, 8, 380 (duplicate). On August 17, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On October 19, 2012, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff advances four arguments on appeal. See Memorandum in Support of Plaintiff's Position (Doc. No. 19; "Pl.'s Mem."[3]), filed October 31, 2013.[4] First, Plaintiff attacks

---

[3] Citations to this memorandum are to the page numbers assigned by the Court's electronic filing system.

[4] Initially, Plaintiff characterizes the issues as two broad issues. See Pl.'s Mem. at 1. In the body of his memorandum, however, Plaintiff advances additional issues. See id. at 6-16. Plaintiff also filed a motion on November 17, 2013 seeking to clarify one of his arguments (Doc. No. 22), and the Court granted that motion by Order entered November 20, 2013 (Doc. No. 25).

the ALJ's adverse credibility finding. See Pl.'s Mem. at 6-7. Second, Plaintiff argues that the ALJ erred in evaluating various medical source opinions. See id. at 8-11. Third, Plaintiff contends the ALJ erred in assigning him no limitations regarding concentration, persistence, or pace. Id. at 11-13. Fourth, Plaintiff asserts that the ALJ improperly denied his motion to supplement the record in the form of testimony by his treating psychologist. Id. at 13-16. On December 26, 2013, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 27; "Def.'s Mem.") responding to Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 16-27. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of October 12, 2007 through his date last insured of September 30, 2008." Tr. at 16 (emphasis and citation omitted). At step two, the ALJ found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairments: schizophrenia and fractured left wrist residuals." Tr. at 16 (emphasis and citation omitted). At step three, the ALJ ascertained that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

The ALJ determined that Plaintiff had the following residual functional capacity ("RFC") through the date last insured:

> [Plaintiff] is an individual whose left wrist fracture residuals limit him to performing light exertional work activities as defined in 20 CFR [§] 404.1567(b). He can individually sit, stand, walk, push and /or pull with his right upper extremity and / or both legs for at least six of eight hours each eight-hour workday. He can lift / carry 20 pounds occasionally (up to 1/3 of an eight-hour workday) and 10 pounds frequently (up to 2/3 of an eight-hour workday). He can individually push / pull with his left upper extremity, crawl, and handle and finger objects with his left hand / wrist for no more than 1/3 of an eight-hour work day. He should avoid concentrated exposure to extreme vibrations that may exacerbate his wrist pain.
>
> [Plaintiff] is also an individual whose schizophrenia precludes him from having any interaction with the general public at all times, limits him to no more than one hour of social interaction with supervisors and coworkers per day, but [Plaintiff] can work in close proximity to such individuals.

Tr. at 19 (emphasis omitted).  At step four, the ALJ found that "[t]hrough the date last insured, [Plaintiff] was unable to perform any past relevant work . . . as a sheet metal fabricator / installer, . . . metal stacker, . . . and welder[.]"  Tr. at 26 (some emphasis and citation omitted).  At step five, the ALJ considered Plaintiff's age (forty-nine (49) years old on the date last insured), education ("at least a high school education"), work experience, and RFC, and determined that "[t]hrough the date last insured . . . there are jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed."  Tr. at 26 (emphasis and citation omitted).  Relying on the testimony of the VE, the ALJ identified as representative jobs "garment inspector," "light fixture inspector," and "agricultural inspector[.]"  Tr. at 27.  The ALJ concluded that Plaintiff "was not under a disability . . . at any time from October 12, 2007, the alleged onset date, through September 30, 2008, the date last insured."  Tr. at 27 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ."  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales,

402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff advances four arguments on appeal.  Prior to advancing these arguments, however, Plaintiff points out in his memorandum that the ALJ's Decision is based upon the faulty assumption that Plaintiff's date last insured for DIB was September 30, 2008.  See Pl.'s Mem. at 5 (citing Tr. at 14, 16, 28).  In reality, Plaintiff's date last insured was one year later, September 30, 2009, and this was known to the ALJ during the hearings. See Tr. at 40 (ALJ affirming Plaintiff's counsel's belief at July 21, 2011 hearing that the date last insured was September 30, 2009); Tr. at 107 (ALJ recognizing at November 5, 2010 hearing that Plaintiff's date last insured was September 30, 2009); Tr. at 279.[6]  The undersigned finds that the ALJ's mistake in this regard materially affects the overall Decision and frustrates judicial review of whether it is supported by substantial evidence; accordingly, remand is required for further consideration using the correct date last insured.

---

[6] Defendant does not dispute that Plaintiff was insured until September 30, 2009.  See Def.'s Mem. at 4 (citing Tr. at 279) (stating that "Plaintiff must prove that he became disabled on or before his insured status for DIB expired on September 30, 2009").

One of the bases relied upon by the ALJ for discounting a number of treating/examining opinions was that the treatment occurred after the date last insured or the opinions were rendered following a review of medical evidence that was not developed until after the date last insured. See Tr. at 18, 24, 25. Because the ALJ had the wrong date last insured listed in the Decision, however, his findings with respect to one treating psychologist (Frank G. Stanley, Ph.D.) are erroneous, and his findings with respect to at least one treating psychiatrist (Richard Christensen, M.D.) and one psychologist who evaluated/tested Plaintiff on three occasions (Justin A. D'Arienzo, Psy.D., ABPP) are undermined at least to a degree. These opinions and the ALJ's findings are discussed in detail below.[7]

Dr. Stanley authored a report on May 22, 2009 in which he diagnosed "Bipolar I Disorder, Most Recent Episode Hypomanic, Severe Without Psychotic Features";

---

[7] If an ALJ concludes the medical opinion of a treating physician or psychologist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician or psychologist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). An examining physician or psychologist's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").

While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'" Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

"Schizoaffective Disorder, Bipolar Type"; "Posttraumatic Stress Disorder"; "Learning Disorder NOS"; and "Attention-Deficit/Hyperactivity Disorder, Combined Type[.]" Tr. at 727, 731.  He opined, among other things, that Plaintiff "reported attention, concentration, and memory problems that might be partly related to an attentional deficit, but also could be the result of brain damage from his use of inhalents when he was young as well as an underlying psychotic thought process." Tr. at 732.  According to Dr. Stanley, "[h]is clinical presentation suggests that he will be unable to sustain gainful employment, possibly even with psychiatric and psychological intervention." Tr. at 732.

On October 22, 2010, Dr. Christensen filled out a Mental Impairment Questionnaire, see Tr. at 737, in which he stated in part as follows.  Plaintiff had been treated "in [Dr. Christensen's] psychiatric clinic in the past and most recently for the past several months." Tr. at 734.  Dr. Christensen's diagnosis was Schizoaffective disorder, bipolar type.  Tr. at 734.  According to Dr. Christensen, Plaintiff exhibited "minimal response [to treatment] regarding psychotic symptoms [and] distorted thinking[.]" Tr. at 734.  Dr. Christensen noted that Plaintiff had "[p]ersistent auditory hallucinations, referential delusions, [and] poor affective/mood regulation." Tr. at 734.  The prognosis was "poor." Tr. at 734.

Dr. Christensen opined that Plaintiff had none to mild restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and three episodes of decompensation within a twelve month period of two weeks' duration. Tr. at 736.  According to Dr. Christensen, Plaintiff had a "[m]edically documented history of a chronic organic mental, schizophrenic, etc. or affective disorder of at least 2 years' duration that has caused more than a minimal limitation

-8-

of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support," and "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause [Plaintiff] to decompensate." Tr. at 736-37.

On May 17, 2011, Dr. Stanley wrote a letter to Plaintiff's counsel in which he addressed Dr. Christensen's opinion. Tr. at 740. The letter states in part as follows:

> I am responding to your request for an opinion on [Plaintiff] and the Mental Impairment Questionnaire completed by Dr. Richard Christensen.
>
> My last session with this patient occurred on 06/26/2009 when he was agitated, hyper-religious, and paranoid. He walked out against psychological advice and never returned. [Plaintiff] is an extremely unstable individual who experiences suicidal and homicidal ideations, paranoia, and psychosis. I diagnosed him with Schizoaffective Disorder and Bipolar Disorder. He has religious delusions and violent ideations. I concur with all of Dr. Christensen's signs and symptoms on Section 7 of the Mental Impairments Questionnaire. I disagree with his ratings on Functional Limitations in Section 10. I believe that A [(activities of daily living)] should be listed as Moderate, B [(social functioning)] as Extreme, and C [(concentration, persistence, or pace)] as Extreme. [Plaintiff] definitely is not malingering. He never will be able to work with his level of psychosis and interpersonal functioning. His illness will be lifelong. I do not believe he is capable of managing his own benefits and should be under the supervision of a social worker who makes sure he gets his psychiatric treatment, medications, and uses his funds appropriately. I believe that [Plaintiff] is at risk for being a victim of people who would take advantage of his disability.

Tr. at 740.

Also, Dr. D'Arienzo wrote an undated letter summarizing psychological assessments dated July 22, 2010 and August 18, 2010. Tr. at 706-07. In opening his letter, Dr. D'Arienzo wrote that Plaintiff "was initially seen for a psychological consultation on 11/3/2009." Tr. at 706. According to Dr. D'Arienzo, however, "[a] psychological evaluation was not completed in its entirety [on that date] because [Plaintiff] appeared to be experiencing audio and visual

-9-

hallucinations and he was unable to provide a reliable record of his personal and psychological history." Tr. at 706. Dr. D'Arienzo then went on to summarize the results of testing he performed on the later (2010) dates. Tr. at 707.

>The ALJ discounted Dr. Stanley's May 17, 2011 opinion, stating as follows:
>
>Dr. Stanley . . . rendered such an opinion after reviewing medical records of [Plaintiff's] mental health treatment after [Plaintiff's] date last insured, which indicates his opinion of May 17, 2011, is not limited to [Plaintiff's] functional ability as of his date last insured. Because Dr. Stanley's May 17, 2011 opinion clearly takes into account evidence from almost one year after [Plaintiff's] date last insured, his opinion is afforded little weight as to [Plaintiff's] functional ability prior to the date last insured.

Tr. at 24. The ALJ's finding in this regard is erroneous because he mistakenly believed Plaintiff's date last insured was September 30, 2008. In fact, as stated above, Plaintiff's date last insured was September 30, 2009, Tr. at 40, 107, 279, and in fact, Dr. Stanley had reviewed medical records predating September 30, 2009, Tr. at 740.

Similarly, the ALJ discounted the opinions of Dr. Christensen and Dr. D'Arienzo in large part because they relied upon medical evidence that was developed after the date last insured. Tr. at 24, 25. While Dr. Christensen's opinion appears to have been rendered, in part, based upon evidence developed in the year following the actual date last insured, he also noted in his October 22, 2010 opinion that Plaintiff had been treated "in [Dr. Christensen's] psychiatric clinic in the past and most recently for the past several months." Tr. at 734. This leaves open to interpretation the medical evidence upon which Dr. Christensen relied in rendering his opinion. And, although Dr. D'Arienzo's opinion was based upon psychological testing and evaluations that had been done after the actual date last insured, he specifically noted an inability to even evaluate Plaintiff on November 3, 2009,

just more than a month following the actual date last insured, because Plaintiff was experiencing audio and visual hallucinations on that date. Tr. at 706.[8]

Although these medical sources did not agree entirely on the effects of Plaintiff's impairments, they individually and collectively observed and opined that Plaintiff's mental impairments were so severe as to render him unable to perform work. The ALJ discounted these opinions under the erroneous belief that Plaintiff's insurance expired one year prior to when it actually expired, and this mistaken belief materially affected the Decision as a whole. Accordingly, remand is required for the Administration to further consider Plaintiff's claim using the correct date last insured.[9]

## V. Conclusion

After due consideration, it is

**ORDERED**:

---

[8]     "[A]s a simple matter of logic, even if medical evidence . . . did not exist at the date last insured, that fact standing alone does not mean that such evidence lacks probative value as to a plaintiff's pre-date last insured impairments." Freismuth v. Astrue, 920 F. Supp. 2d 943, 951 (E.D. Wis. 2013) (citations omitted) (holding the ALJ erred by not considering the post-date last insured opinion of claimant's treating physician); but see Mason v. Comm'r of Soc. Sec., 430 F. App'x 830, 832-33 (11th Cir. 2011) (holding an ALJ does not err in discounting a physician's opinion when physician did not see claimant until after her date last insured and no corroborating medical evidence indicated the claimant suffered from disability during the relevant time period). Even a retrospective diagnosis may be considered if it is validated by evidence within the relevant time period. Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998) (citing Adams v. Chater, 93 F.3d 712, 714 (10th Cir.1996); Perez v. Chater, 77 F.3d 41, 48 (2d Cir.1996); Jones v. Chater, 65 F.3d 102, 103-04 (8th Cir.1995); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457-62 (9th Cir.1995); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 (1st Cir.1987)).

[9]     Plaintiff asks for this Court to award benefits, or alternatively to reverse and remand the matter for further proceedings. See Pl.'s Mem. at 17. For the reasons stated in Defendant's Memorandum, the Court declines to award benefits and instead finds the proper course is to remand the matter for further consideration. See Def.'s Mem. at 10-11.

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

 (A) Reconsider Plaintiff's claim using the correct date last insured;

 (B) If appropriate, address the other issues raised by Plaintiff in this appeal; and

 (C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on September 17, 2014.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record